# Petition of JACK LEASER.

No. A-11109.   June 15, 1949.

(207 P. 2d 365.)

Jack Leaser, No. 46206, McAlester, petitioner, pro se.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

BAREFOOT, J.  Petitioner, Jack Leaser, has filed in this court a petition labeled "Petition for Mandamus." In this petition he asks that the Pardon and Parole Board be required to review his application for parole. He alleges that they have refused to give consideration or hearing upon his application by reason of the provision of Tit. 57 O.S. 1941 § 332.7, enacted by the Legislature in 1947, and which provides:

"Upon completion of one-third (⅓) of the sentence of any person confined in a penal institution in the State of Oklahoma such person shall be eligible for consideration for a parole, and it shall be the duty of the Pardon and Parole Officer, with or without application being made, to cause an examination to be made at the penal institution where the person is confined, and to make inquiry into the conduct and the record of the said person during his confinement in said penal institution, and thereafter said Pardon and Parole Officer shall report

to the Pardon and Parole Board his findings, which shall be considered as a basis for consideration of said person for recommendation to the Governor for parole."

This petitioner is now an inmate of the State Penitentiary at McAlester, and filed this petition without the aid of counsel; and no lawyer has appeared in his behalf in this court.

Upon the filing of the petition, this court issued an order to show cause, assigning the matter for hearing, and the Pardon and Parole Board was directed to appear and respond thereto. While no response has been filed, the Attorney General has filed a copy of an opinion by the Attorney General, addressed to the Pardon and Parole Board, dated May 20, 1947, which has reference to the construction to be placed upon the above-quoted statute, and a motion to dismiss the petition, citing State ex rel. McDaniel v. Turner, Sheriff, 84 Okla. Cr. 247, 181 P. 2d 296.

The facts with reference to petitioner's case are that he was convicted in Oklahoma county in five cases for robbery with firearms, and sentenced to serve 20 years in each case, and in a sixth case was given a term of five years in the penitentiary. In all of these cases the judgments and sentences were to run concurrently. He was entered at the penitentiary on July 7, 1935. While a member of the State Penitentiary band, and as a trusty, he with inmate Ray Douglas escaped at Maud, Okla., on August 25, 1940. He was captured and returned to the penitentiary on September 8, 1940, and recommitted to serve the balance of the 20 year sentences.

During the time of his absence from the penitentiary as an escapee, he was charged with the crime of robbery with firearms in McClain county, Okla. He was

returned there for trial, and was convicted and given a sentence of 25 years in the State Penitentiary. On February 9, 1945, he completed the service of six cases— five of 20 years each and one for five years—and was immediately "dressed in" to serve the 25 year sentence from McClain county, which term he is now serving.

In his petition it is alleged that the Hon. Joe Harp, the State Pardon and Parole Officer, has refused to present his application for a parole to the Pardon and Parole Board for the purpose of a hearing thereon, by reason of the fact that he has not served one-third of the 25 year sentence from McClain county, as provided by the statute above quoted. He alleges that the application for parole is one presenting "extraordinary" circumstances, and that he is entitled to have the same considered by the Pardon and Parole Board prior to the expiration of the one-third period prescribed by the statute.

On July 11, 1944, at a special election there was adopted a Constitutional Amendment which provides, Art. VI, § 10:

"There is hereby created a Pardon and Parole Board to be composed of five members; three to be appointed by the Governor; one by the Chief Justice of the Supreme Court; one by the Presiding Judge of the Criminal Court of Appeals or its successor. The appointed members shall hold their office co-terminous with that of the Governor and shall be removable for cause only in the manner provided by law for elective officers not liable to impeachment. It shall be the duty of the Board to make an impartial investigation and study of applicants for commutations, pardons or paroles, and by a majority vote make its recommendations to the Governor of all deemed worthy of clemency.

"The Governor shall have the power to grant, after conviction and after favorable recommendation by a majority vote of the said Board, commutations, pardons and paroles for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. The Governor shall have power to grant after conviction, reprieves, or leaves of absence not to exceed sixty days, without the action of said Board.

"He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole or pardon, granted, stating the name of the convict, the crime of which he was convicted, the date and place of conviction, and the date of commutation, pardon, parole and reprieve."

The Attorney General in his letter to the Pardon and Parole Board dated May 20, 1947, makes this statement:

"You ask further whether a prisoner may be eligible to parole prior to service of one-third of the judgment and sentence. There is room for argument as to the answer to be given this question. However, if the section be held to prohibit the consideration of a prisoner for parole prior to service of one-third of his sentence, it would result in depriving a man serving a life sentence of any possibility of a parole, as it is impossible to determine when he has served one-third of his sentence. We do not believe the legislature intended to establish a rule which would result in such a situation. We think it was the intent to make it the mandatory duty of the Pardon and Parole Officer to make investigation with reference to fitness for parole of every prisoner who had served one-third of his sentence, but that it was not the intent of the legislature to preclude consideration of a parole for prisoners prior to such time.

"It is therefore, the opinion of the Attorney General that the Pardon and Parole Board may, in its discretion, consider for purposes of parole a prisoner who has not yet completed serving one-third of his sentence."

We are of the opinion that the above construction by the Attorney General is correct. We are of the opinion that it was the intention of the Legislature by the enactment of the above statute to make it the mandatory duty of the Pardon and Parole Officer to make an examination of inmates of the State Penitentiary after they had served one-third of their prison sentence and this "with or without application being made." A report of this examination should be made to the Pardon and Parole Board by the Pardon and Parole Officer for consideration by the Board, and recommendation to the Governor. This, of course, does not mean that the Pardon and Parole Officer does not have the right to investigate and make reports to the Board, or that they do not have the right to consider an application prior to the serving of one-third of the prison term. It may be easily observed that this investigation might reveal that one had been imprisoned who was not guilty of the crime charged, or that some injustice had been done which would entitle the prisoner to immediate relief or consideration. It would be inconceivable to say that relief could not be had under these circumstances until one had served one-third of his sentence. The Legislature did not so intend at the time of the enactment of this statute, but only intended that when one had served one-third of his sentence it should be the mandatory duty of the officers at that time to investigate his prison record and the facts as to whether he was entitled to consideration for a parole or pardon. This statute was enacted for the purpose of giving relief to unfortunate persons who are unable to employ counsel, or bring to their assistance someone who can present to the proper authorities the facts surrounding their cases. It was

not intended that this statute should be so construed as to deny such prisoners their just rights.

Under this statute one seeking relief prior to the termination of one-third of his sentence should present an application or facts of his case to the Pardon and Parole Officer, and if in the opinion of this Officer the facts justify, the applicant should be given a hearing before the Pardon and Parole Board. This investigation by the Pardon and Parole Officer should be made with fairness and impartiality.

From the facts presented in this case, we are of the opinion that the Pardon and Parole Officer should have recommended a hearing for petitioner before the Board. We do not by this mean to in any way suggest the result to be arrived at in this investigation. The Pardon and Parole Board and the Pardon and Parole Officer are men of the highest standing in this state, and they have and deserve the highest respect of the citizenship of the state. Their work has been outstanding and they will arrive at the correct conclusion in this case, and in all cases coming before them.

In the letter by the Attorney General to the Board, the question as to what constitutes one-third of a sentence and especially of a life sentence is discussed. This question is not involved in this case, and will, therefore, not be considered.

The petition for writ of mandamus is denied, for the reason that to grant the same would be the exercise of original jurisdiction, and would not be in the exercise or in aid of our appellate jurisdiction in criminal cases. However, because of the importance of the construction to be placed upon this section of the statute by the Pardon and Parole Board in its future deliberations,

we have expressed our opinion as to the interpretation that should be placed thereon.

Writ denied.

JONES, P. J., and BRETT, J., concur.